**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CASE NO. 25-CR-82** |
| MARK ANTHONY TUCCI | : | |

**GOVERNMENT'S PLEA MEMORANDUM**

**I.    INTRODUCTION**

Defendant Mark Anthony Tucci was charged by Information, waiving prosecution by Indictment, with one count of threats to use a dangerous weapon to interfere with a federally protected activity, in violation of 18 U.S.C. § 245(b)(2)(B), one count of cyberstalking in violation of 18 U.S.C. § 2261A(2)(B), one count of interstate communication of threats in violation of 18 U.S.C. § 875(c), and one count of threats to interfere with a federally protected activity in violation of 18 U.S.C. § 245(b)(2)(C). On February 1, 2024, and June 3, 2024, defendant Mark Anthony Tucci threatened and harassed two victims, both African American, using racist slurs (including the word "n***er"). In February 2024, while driving on the I-95, the defendant repeatedly threatened to shoot and kill a victim while calling her a "n***er," then threw a glass mug at the victim, denting her vehicle. In June 2024, the defendant engaged in a campaign of verbal abuse and racist threats directed at an African-American employee of a Philadelphia city agency. His conduct caused extreme fear and trauma in both victims, and interfered with their engagement in federally protected activities, and he targeted them because of their race.

The defendant has indicated that he will plead guilty to the Information, and the parties

1

have signed a plea agreement, which will be forwarded to the Court in advance of the guilty plea hearing. The plea hearing is scheduled for August 21, 2025.

## II.    <u>**ELEMENTS OF THE OFFENSES**</u>

To prove a violation of 18 U.S.C. § 245(b)(2)(B) (threats to use dangerous weapon to interfere with federally protected activities) (Count One), the government must demonstrate the following elements beyond a reasonable doubt:

1. The defendant used force or threat of force;

2. The defendant willfully intimidated or interfered with a person, or attempted to do so;

3. The defendant acted because of that person's race or color;

4. The defendant acted because that person was engaged in an enumerated protected activity, including participating in or enjoying any program administered by any State or subdivision thereof, that is, driving on Interstate 95; and

5. The defendant threatened to use a dangerous weapon.

To prove a violation of 18 U.S.C. § 2261A(2) (cyberstalking) (Count Two), the government must demonstrate the following elements beyond a reasonable doubt:

1. The defendant used a facility of interstate commerce;

2. to engage in a course of conduct that places a person in reasonable fear of death or serious bodily injury, or causes substantial emotional distress, either to that person or to a partner or immediate family member;

3. With the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate that person.

To prove a violation of 18 U.S.C. § 875(c) (interstate communication of threats) (Count Three), the government must demonstrate the following elements beyond a reasonable doubt:

1. The defendant knowingly sent a message that traveled in interstate or foreign commerce;

2.      The defendant intended to make a threat, or knew that his statement would be understood as a threat; and

3.      The message contained a true threat to injure the person of another, that is, the threat was made under circumstances that would lead a reasonable person to believe that the defendant intended to injure another person.

To prove a violation of 18 U.S.C. § 245(b)(2)(C) (threats to interfere with federally protected activities) (Count Four), the government must demonstrate the following elements beyond a reasonable doubt:

1. The defendant used force or threat of force;

2. The defendant willfully intimidated or interfered with a person, or attempted to do so;

3. The defendant acted because of that person's race or color;

4. The defendant acted because that person was enjoying employment, or any perquisite thereof, by any agency of any State or subdivision thereof, that is, an agency of the city of Philadelphia, identified below as "Philadelphia Agency 1."

## III.    <u>MAXIMUM PENALTIES</u>

The Court may impose the following statutory maximum sentences:

For the charge of interference with federally protected activities where the defendant threatened the victim with use of dangerous weapon: 10 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

For the charge of cyberstalking: five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

For the charge of interstate communication of threats: five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

For the charge of interference with federally protected activities: one year imprisonment (misdemeanor), one year of supervised release, a $100,000 fine, and a $25 special assessment.

In total, the defendant faces a statutory maximum sentence of 21 years' imprisonment, three years of supervised release, a $850,000 fine, and a $325 special assessment.

## IV.    FACTUAL BASIS FOR THE PLEA

If the case were to proceed to trial, the government would introduce evidence which would establish the following facts:

### 1.    February 2024 Conduct (Count One)

On February 1, 2024, just before 9am, Victim 1—who, as relevant to this case, is African American—was driving southbound on Interstate 95 ("I-95") to work. I-95 was a public road and interstate highway that ran through multiple states including Pennsylvania. It was federally funded and administered by the states and their subdivisions, including the Commonwealth of Pennsylvania. Traffic was heavy as it was rush hour. As Victim 1 approached their exit in Northeast Philadelphia, the defendant pulled up next to Victim 1 on their right side, and rolled down his driver side window. The defendant screamed at Victim 1, **"**N***er [*expletive*]! Oh you're a n***er [*expletive*]! I'm going to kill you n***er [*expletive*]!" The defendant continued to scream, "I'm going to kill you n***er [*expletive*]! I'm going to shoot you!" The defendant then reached down into his car, pulled out a glass mug containing coffee, and threw it at Victim 1's car, denting it. Victim 1 was terrified. Victim 1 believed that when the defendant reached down into his car, the defendant was reaching for a firearm. Victim 1 pulled off the I-95, and felt that she was having a panic attack. Victim 1 called the police.

### 2.    June 2024 Conduct (Counts Two through Four)

The defendant started contacting an agency of the city of Philadelphia ("Philadelphia Agency 1") in April 2024 to inquire about the status of a pending investigation relating to his child. On or about the afternoon of June 3, 2024, the defendant used his cellular telephone, a

facility of interstate commerce, to call Philadelphia Agency 1, and was connected to Victim 2, who was employed by Philadelphia Agency 1. When Victim 2 answered the defendant's call in Victim 2's capacity as an employee of Philadelphia Agency 1, the defendant became irate and started yelling. Victim 2 asked him to stop yelling, and the defendant did not stop. Victim 2 hung up on him, and the defendant called back and continued to yell at Victim 2. Victim 2 hung up again.

On that same day, June 3, 2024, the defendant sent at least six e-mails, which were sent in interstate commerce, using his personal e-mail address, to Victim 2's e-mail with the subject lines, "N***er" [*expletive*], "Fat lazy n***er [*expletive*]," "Typical racist n***er [*expletive*]," and "No one was yelling fat lazy n***er [*expletive*]." One of the defendant's e-mails to Victim 2 said, "You motherfuckers are gonna regret this shit. First time your lazy koolaid drinking ass picked up in weeks. Then you hang up on your complicit in protecting these creeps let's hope they protect you n***er [*expletive*] Thank You Mark." As relevant to this case, Victim 2 is African American. Victim 2 feared for their life.

Then, the defendant sent text messages to Victim 2 on Victim 2's personal cell phone. Victim 2 had not provided, and had never provided, the defendant their personal cell phone number. On these messages, the defendant mentioned Victim 2 by name, mentioned the name of the street on which Victim 2 resided at that time, and said: "This is personal now … You wanna fuck with my family … Now your [*sic*] fucked." The defendant then wrote, "Can't hang up on me in person c*nt." In total, the defendant sent, in interstate commerce, approximately eight text messages to Victim 2.

The defendant continued to call Philadelphia Agency 1 on that same day, June 3, 2024. That afternoon, the defendant was connected to another employee of Philadelphia Agency 1

5

(hereinafter "Witness 1"). The defendant was irate, and repeatedly called Witness 1 a "n***er [*expletive*]." As relevant to this case, Witness 1 is African American.

Using the caller ID from the Witness 1's phone, Witness 1's manager (hereinafter, "Witness 2") called the defendant back. The defendant answered and immediately began yelling at Witness 2 about the investigation relating to his child. The defendant demanded the records from the investigation. He then said he wanted to talk to Victim 2, whom he specifically mentioned by name. The defendant said he was going to come down to Philadelphia Agency 1 tomorrow and "hurt everyone." He also said he knew Victim 2's address and he was going to hurt Victim 2. The defendant repeatedly used the word "n***er" [*expletive*]." Philadelphia Agency 1 immediately reported the defendant to the Philadelphia Police Department.

### 3.    Evidence of Motive

If this matter were to proceed to trial, in addition to the facts described above, the government would also present evidence of the defendant's motive. This includes a recorded call made in April 2024 to another African American employee of Philadelphia Agency 1 in which the defendant stated, among other things, "Hi, some n***er b*tch just called my fucking cell phone pretending to be a supervisor, some dumb fucking n***er … you hear me you fucking n***er … You sound like a fat n***er too. Put your fat n***er boss on the phone … I'm coming right down there now to see you guys. So I'll be there shortly. … If a n***er is going to fucking hang up on me when I'm trying to get help … Tell the FBI to fucking suck a dick too … ."

The government would also introduce calls made in late May and early June 2024, to police in which the defendant expressed concerns about being connected with an officer that he thought was Hispanic, saying, "Can you also say that if he's Hispanic, I'd rather be contacted by someone else. Because this involves race and it involves Hispanics being on one side, so I find it

a bias already." After he was advised that the officer was not Hispanic, the defendant responded, "Ok great, that's even better then. Makes me feel a little better."

Additionally, the government would introduce evidence of the defendant's racial bias procured via search warrant from the defendant's iCloud. This evidence includes the full PDF file of "The Great Replacement," the manifesto written by Brenton Tarrant, who killed 51 and injured 49 at two New Zealand mosques; videos celebrating white supremacist accelerationism and Neo-Nazism, including multiple videos celebrating Nazi salutes and Hitler; racist images and memes; and songs from a white supremacist rapper that include numerous references to "killing n*****s" and creating an all-white society.

## V.   **CONCLUSION**

The United States respectfully submits that this summary of evidence provides a factual basis for a guilty plea by defendant Mark Anthony Tucci to all counts of the Information.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ J. Jeanette Kang*
J. JEANETTE KANG
Assistant United States Attorney

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

*/s/ Samuel A. Kuhn*
SAMUEL KUHN
Trial Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Government's Plea

Memorandum was served by email upon Douglas Stern, Esq. (counsel for defendant).

Date: August 18, 2025                    _/s/ J. Jeanette Kang_____
                                          J. JEANETTE KANG
                                          Assistant United States Attorney

8